UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD O'NEIL TURNER,

Plaintiff,

Case No. 1:11-cv-1128

v.

Honorable Paul L. Maloney

UNKNOWN PARTIES #1 et al.,

Defendants.

/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. In addition, Plaintiff's motion for appointment of counsel (docket #8) will be denied.

## Discussion

I. Factual allegations

Plaintiff Leonard O'neil Turner is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility in St. Louis, Michigan, though the events about which he complains occurred while he was incarcerated at the Oaks Correctional Facility (ECF) in Manistee, Michigan.

Plaintiff sues the following employees of ECF: two unidentified transportation officers[1] (hereinafter, "Unknown Drivers"), Dr. Robert Compton, Nurse Addy Briske, Correctional Officers Brown and Wandrych, and an unidentified Medical Administrator.[2]

*1. Van accident.*

Plaintiff asserts that, on October 2, 2009, Defendants Unknown Drivers placed him in an MDOC van in handcuffs and shackles along with six other prisoners. Plaintiff asked to be buckled into his seatbelt, but Defendants ignored his request, in violation of Michigan's seat belt law and MDOC Policy Directive 01.03.120. *See id.* at ¶ C ("Persons in a state-owned vehicle who are occupying a vehicle seat equipped with a safety belt shall use the belt when the vehicle is in motion."). As the van was "speeding up the road," the driver ran over an object in the road and lost control of the vehicle. (Compl. ¶ 14.) The driver managed to stop the vehicle on the other side of the street, just before crashing into an embankment. During the incident, Plaintiff's body was jerked and thrown into the separation glass, causing a "head bump and small laceration across his forearm." (Compl. ¶ 15, docket #1.)

---

[1]The drivers are identified in the caption of this case as "Unknown Parties #1."

[2]The Medical Administrator is identified in the caption of this case as "Unknown Party #1."

Plaintiff claims that the failure by Unknown Drivers to provide for his safety constituted a breach of contract, negligence, deliberate indifference (in violation of the Eighth Amendment) and a denial of due process (in violation of the Fourteenth and Ninth Amendments).

*2. Medical care.*

When Plaintiff arrived at ECF after the van accident on October 2, he realized that he had "extreme strain and some swelling in his neck and back." (Compl. ¶ 16.) As he waited for the arrival of the duty nurse, he started experiencing "sharp strain and shooting pain from his back to his right leg." (*Id.* at ¶ 17.) When the nurse arrived, Plaintiff explained what had happened to him. She responded that the x-ray technician would not be back until the following Monday, but she would treat his injuries and give him something for his pain.

On October 3, Nurse Briske told Plaintiff that his prescription for Baclofen (a muscle relaxant) was being terminated. After Plaintiff submitted a kite to health care staff, he was informed that his Baclofen had been discontinued per a doctor's order on September 7, until reevaluation in October. He was also informed that a medical practitioner reviewed Plaintiff's records on October 6 and ordered that Plaintiff taper his medication and discontinue it. (*See* App'x B to Compl., 10/9/2009 Kite Response, docket #1, Page ID#19.) Plaintiff asserts that he was not examined by anyone from health care.

On October 13, Plaintiff attempted to explain to Nurse Briske why he needed Baclofen. On October 15, Plaintiff requested assistance from Nurse Monroe (who is not a Defendant to this action) "for pain medication." (Compl. ¶ 30.) The next day, Monroe responded that no physician was at the facility, but his chart would be reviewed the following Monday. (Compl. ¶ 30; *see* App'x B to Compl., 10/16/2009 Kite Response, docket #1, Page ID#23.)

The following Monday, October 19, Plaintiff sent Nurse Monroe a kite regarding his pain medication. He also requested assistance from Nurse Briske at the nurse's station. The next day, Nurse Monroe indicated that the doctor had ordered Motrin and an appointment was scheduled for October 22. (Compl. ¶ 36; *see* App'x B to Compl., 10/20/2009 Kite Response, docket #1, Page ID#25.) Plaintiff was not seen by a doctor or anyone else from health care on October 22.

Defendant Dr. Crompton saw Plaintiff on November 13. Crompton recommended an increase in Plaintiff's Flexeril (another muscle relaxant) due to Plaintiff's complaint of "extreme pain in his lower back and right leg," but Plaintiff never received an increase in medication. (Compl. ¶ 45.) On November 20, 2009, he sent a kite to Nurse Monroe regarding the increase in medication. Nurse Monroe responded that there was no documentation of an increase; Plaintiff's "chart was given to the provider to review and that request was denied." (App'x B to Compl., 11/25/2009 Kite Response, docket #1, Page ID#27.)

Some time later, Plaintiff received exercise recommendations and a book from a nurse. Plaintiff followed the recommendations and sent a kite to health care on February 28, 2010, because the exercises were not working. Plaintiff received a response indicating that he would be seen on or before March 4. Before the date of the appointment, however, Defendant Briske returned Plaintiff's kite without explanation other than a circle around the signature area.[3] Thereafter, Briske cancelled the appointment.

[3]Consistent with Plaintiff's allegations, the health care request form attached to the complaint shows a circle around the signature line. (*See* App'x B to Compl., docket #1, Page ID#28.) According to the form, the signature verifies the prisoner's understanding that he or she will be charged for the health care visit unless the visit is for certain reasons specified on the form There is no signature on the form, however.

Plaintiff was again seen by Dr. Crompton on March 24. Crompton told Plaintiff that because the Flexeril was not working, Crompton was going to stop the prescription. When Plaintiff protested this decision, Crompton replied "HELL NO" in an angry voice. (Compl. ¶ 52.)

On or around April 14, Plaintiff was told that he had a red mark on his back about the size of a quarter. Plaintiff immediately requested a sick call via a health care kite, but a week later he was denied medical assistance by Defendant Briske.

On April 25, Plaintiff received a kite response stating that Plaintiff would be seen as an "add on" on April 23, though that date had already passed. Plaintiff then filed complaints against Crompton and Briske with the State of Michigan Bureau of Health Services' Complaint and Allegation Division. (Compl. ¶ 57.)

On April 29, Plaintiff filed a grievance against Briske regarding denial of medical care. A week later, he was seen by Nurse Practitioner Eipperle, who explained to Plaintiff that his pain and itching were the result of a shingles virus. Eipperle also told Plaintiff that his blood pressure was "very high, 160/100." (Compl. ¶ 61.)

Thereafter, Plaintiff submitted numerous kite requests "for being denied pain relievers due to amongst other reasons, elevated blood pressure," and he filed grievances against Crompton and Briske for "repeated violations as well as retaliating against [Plaintiff] with their denial of medical care." (Compl. ¶ 62.) He also requested "outside medical assistance" from "health care Administrative Department because of amongst other reasons, his rapid lost [sic] of weight in a one month period of Ten to Twenty-Five Pounds." (*Id.* at ¶ 63.) Plaintiff received no response from the medical department.

On November 17, 2010, Plaintiff was transferred out of ECF to the St. Louis Correctional Facility, "where he is now receiving proper medical treatment." (Compl. ¶ 69.) Plaintiff asserts that he "is in great pain . . . his back is stiff at times, [it] does not turn properly and he can hardly stand for more than five minutes at a time, or in the morning when urinating." (*Id.* at ¶ 67.) Plaintiff contends that if he is not "promptly provided with physical therapy as stated and directed by the physicians at both Standish Maximum Correctional Facility . . . and Marquette Branch Prison , . . . he risks permanent disability." (*Id.* at ¶ 68.)

Based on the foregoing allegations, Plaintiff claims that Defendants Crompton, Briske, and the Medical Administrator at ECF failed to provide adequate medical care, in violation of Plaintiff's rights under the Eighth Amendment.

*3. Verbal threats / harassment.*

On October 13, 2009, while Plaintiff was speaking with Nurse Briske, Defendant Officer Brown "verbally threaten[ed] [Plaintiff] concerning a stick up and a murder." (Compl. ¶ 28.) On October 19, while Plaintiff speaking with Nurse Briske at the nurse's station, Officer Brown told Plaintiff to "move on." (*Id.* at ¶ 33.) Plaintiff asked Brown what was wrong, and Brown replied, "don't turn a stick up into a murder." (*Id.* at ¶ 35.)

On October 23, Plaintiff saw Officer Brown in the chow hall. Plaintiff said to him, "what's up Brown." (Compl. ¶ 39.) Brown responded "in a very loud and angry voice," saying "'Rick James Bitch!'" (*Id.* at ¶ 40.) Plaintiff asked Brown "what did he call him" and Defendant Officer Wandrych told Plaintiff, "he said Rick James is a bitch." (*Id.* at ¶ 41.) Later that day, Plaintiff was placed in punitive segregation for disobeying a direct order.[4]

[4]According to the Major Misconduct Hearing Report attached to the complaint, Officer Lefler (who is not a Defendant in this action) told Plaintiff to "lock up" but Plaintiff refused. (App'x D to Compl., docket #1, Page ID#73.)

Plaintiff claims that the conduct by Defendants Brown and Wandrych violated Plaintiff's right to due process under the Fourteenth Amendment and constituted cruel and unusual punishment in violation of the Eighth Amendment.

As relief for the foregoing claims, Plaintiff seeks compensatory and punitive damages against Defendants, including damages for injuries sustained as resulted of the van accident, for the denial of medical care, and for the conduct by Defendants Brown and Wandrych.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*,

630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Eighth Amendment**

Plaintiff asserts that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference

standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). Thus, an Eighth Amendment claim comprises objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834. A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Id*. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. *Id*.

1. Van accident

Plaintiff alleges that he was injured in a van accident after Defendants Unknown Drivers ignored his request to buckle his seatbelt. Several courts in other circuits have held that transporting a prisoner without the use of seatbelts or safety restraints does not, by itself, state an Eighth Amendment claim because it does not subject the prisoner to an excessive risk of harm. *See Smith v. Sec'y for Dep't of Corr.*, 252 F. App'x 301, 304 (11th Cir. 2007); *Dexter v. Ford Motor Co.*, 92 F. App'x 637, 642 (10th Cir. 2004) ("We have identified no federal case holding that failure to seatbelt an inmate, standing alone, violates the Eighth Amendment."); *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999); *Ingram v. Harrington*, No. 4:06-CV-P65-M, 2007 WL 2815965, at *5 (W.D. Ky. Sept. 26, 2007). In *Dexter*, the court reasoned:

> The risk of a motor vehicle accident is dependent upon a host of factors unrelated to the use of seatbelts, *viz.*, vehicular condition, time of day, traffic, signage, warning lights, emergency circumstances, weather, road conditions, and the conduct of other drivers. The eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted. While the severity of harm should an accident occur may be exacerbated by the failure to seatbelt, it is not directly occasioned by it and the other variables must be included in the risk equation.

> Thus . . . a failure to seatbelt does not, of itself, expose an inmate to risks of constitutional dimension.

*Dexter*, 92 F. App'x at 641; *see also Foreman v. Unnamed Officers*, No. DKC-09-2038, 2010 WL 2720817 (D. Md. July 7, 2010) (reviewing the case law and noting that "courts seem to require something more than the simple lack of a safety belt during transport"). *But cf. Ford v. Fletes*, No. 98-15792, 2000 WL 249124, at *1 (9th Cir. Mar. 3, 2000) (prisoner may be able to allege facts showing deliberate indifference when he was transported without the use of seatbelts or restraints in a vehicle lacking doors).

On the other hand, courts have held that a failure to fasten a prisoner's seatbelt states an Eighth Amendment claim where the defendant increased the risk of injury by engaging in reckless conduct. *See, e.g., Brown v. Fortner*, 518 F.3d 552, 559 (8th Cir. 2008) (defendant exceeded the speed limit, followed too closely, crossed over double-yellow lines, passed cars when road markings clearly prohibited passing, and ignored the prisoner's request to slow down); *Brown v. Mo. Dep't of Corr.*, 353 F.3d 1038, 1039 (8th Cir. 2004) (defendants exceeded the speed limit at speeds of 70-75 miles per hour, followed too closely, and passed cars when the road markings prohibited passing); *Brown v. Morgan*, No. 94-2023, 1994 WL 610993, at * 1 (8th Cir. Nov. 7, 1994) (defendant drove at a high rate of speed in bad weather); *Brown v. Atkinson*, 2009 WL 1586681, at *1 (W.D. Ark. June 4, 2009) (defendant drove at high speeds, exceeding 50 miles per hour through city streets and up to 100 miles per hour on the freeway, and wove in and out of traffic, leading to several "close calls" before the vehicle crashed); *Barela v. Romero*, No. CIVIL 06-41 JBDJS, 2007 WL 2219441, at *7 (D.N.M. May 10, 2007) (defendant drove at speeds of 80 to 95 miles per hour on the highway, made sudden stops, and laughed at the prisoner's request to stop the vehicle); *see also Taylor v. Stateville Dep't of Corr.*, No. 10-C-3700, 2010 WL 54014185, at *2 (N.D. Ill. Dec. 1, 2010) (reviewing the case law and

concluding that "[t]hose few instances where the courts have found that a constitutional violation may have occurred involved both a refusal to seatbelt the inmate or lack of a seatbelt *along with purposeful, reckless driving by the defendant*") (emphasis added).

In contrast, Plaintiff does not allege that Defendants engaged in reckless conduct. Plaintiff merely contends that Defendants ran over an object while the van was "speeding" up the road. Even assuming, as Plaintiff's allegations imply, that Defendants were driving over the speed limit, he does not state an Eighth Amendment claim. *See Young v. Mich. Dep't of Corr.*, No. 04-10309, 2007 WL 2214520, at *2 (E.D. Mich. July 27, 2007) ("Refusing to seat belt a prisoner during transport and then exceeding the speed limit does not constitute an 'excessive risk to inmate health or safety.' Many people drive without wearing a seatbelt, and speeding on the highway is a frequent occurrence. Although driving fast is risky, it cannot be considered an 'excessive' risk.") (citations omitted); *accord Vinson v. U.S. Marshals Serv.*, No. 0:10-79-RMG, 2011 WL 3903199, at *5 (D.S.C. Sept. 2, 2011). In sum, the Court agrees with the reasoning of *Dexter* and the other opinions cited, *supra*, and concludes that Plaintiff has not stated an Eighth Amendment violation. Even if Defendants refused Plaintiff's request for seatbelts and then exceeded the speed limit while transporting Plaintiff, Plaintiff has not alleged facts indicating that Defendants exposed him to a constitutionally-significant risk of injury. Consequently, Plaintiff's § 1983 claim against Defendants Unknown Drivers will be dismissed for failure to state a claim.

2. Medical care

Plaintiff also asserts that Defendants Crompton, Briske, and the Medical Administrator denied him medical care in violation of his rights under Eighth Amendment. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide

such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be

> repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if a misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006).

The gravamen of Plaintiff's claim is that he did not receive the amount of medication (i.e., Baclofen and Flexeril) that he desired for his condition. It is not entirely clear, however, why Plaintiff needed such medications. Plaintiff alludes to a prescription for Baclofen in existence before he arrived at ECF, but he does not indicate why he was originally prescribed Baclofen. He also refers to pain in his back and leg, but it is not clear whether the Baclofen or Flexeril were necessary or even helpful for this condition.

Furthermore, even assuming Plaintiff needed the medication for back and leg pain, it is not clear that such pain constituted a serious medical condition, much less that Defendants were deliberately indifferent to Plaintiff's serious medical needs; Plaintiff provides scant detail regarding the symptoms that he was experiencing when Defendants allegedly denied him medical care. With regard to Dr. Crompton, Plaintiff alleges that Crompton recommended an increase in Flexeril on one occasion because Plaintiff was in extreme pain. Recommending an increase in medication is not indicative of indifference, however. Plaintiff also alleges that Crompton denied Plaintiff's request for additional Flexeril on another occasion because it did not appear to be working. Plaintiff does not describe his condition at the time of this latter decision; nevertheless, reducing medication that does not appear to be working is not indicative of indifference. Plaintiff may have disagreed with Dr. Crompton's judgment, but that disagreement does not, in itself, state an Eighth Amendment claim. The differences in judgment between Plaintiff and a physician regarding the appropriate treatment are not enough to state a deliberate indifference claim. *See Sanderfer,* 62 F.3d at 154-55.

With regard to Nurse Briske, Plaintiff alleges that she told him that his Baclofen was being terminated based on the decision of a physician, she cancelled an appointment on or around March 4, 2010, and she denied medical assistance for a quarter-sized red mark on Plaintiff's back on or around April 14, 2010. Briske did not violate Plaintiff's Eighth Amendment rights merely by telling him that his Baclofen was being terminated, however. According to the complaint, a doctor made the decision to terminate the medication, not Briske. Even if Briske disagreed with that decision, it is unlikely that she, a nurse, would have had the authority to countermand it. Plaintiff also does not state a claim based on Briske's cancellation of the doctor's appointment or for the denial of treatment for the red mark on Plaintiff's back. Plaintiff does not allege that he was suffering from a serious medical

need when his appointment was cancelled; moreover, a red mark on one's skin is not, in itself, an obviously serious condition requiring prompt attention. Indeed, Plaintiff's condition was reviewed by other care providers within a few weeks of Briske's actions, i.e., by Dr. Crompton on March 24, 2010, and by Nurse Monroe on or around May 5, and Plaintiff does not allege any serious harm, or risk thereof, resulting from any delay in care caused by Briske. Consequently, Plaintiff fails to state a claim against Defendant Briske.

Plaintiff also sues the Medical Administrator responsible for scheduling healthcare appointments ("Unknown Party #1"), but there are no allegations specifically implicating this individual. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").

To the extent Plaintiff's allegations could be construed to assert that the Medical Administrator denied or ignored Plaintiff's requests for medical attention, the allegations are too

vague to suggest that the medical administrator was deliberately indifferent to a serious medical need. As indicated, *supra*, Plaintiff provides few details regarding his symptoms during the time period in question, and it is not at all clear that the Medical Administrator ignored any serious medical concerns. To the contrary, Plaintiff's complaint makes clear that he received significant medical attention for his complaints while he was at ECF, including medication (e.g., Baclofen, Flexeril and Motrin) and visits with multiple health care professionals (e.g., the duty nurse at ECF, Dr. Crompton, Nurse Briske, Nurse Monroe and Nurse Practitioner Eipperle) on multiple occasions. Thus, even assuming that Plaintiff's back and leg pain and shingles were sufficiently serious to satisfy the objective component of an Eighth Amendment claim (and assuming that the Medical Administrator was aware of the seriousness of those conditions), his claim against the Medical Administrator is subject to dismissal because it tends to challenge the degree and adequacy of the care that he received. (*See* Compl. ¶ 72(A)(2) (alleging that Defendants violated his rights by "failing to provide adequate medical care").). That sort of challenge does not state an Eighth Amendment claim. *See Sanderfer*, 62 F.3d at 154-55. For the foregoing reasons, therefore, Plaintiff's claims against Defendants Briske, Crompton, and the Medical Administrator ("Unknown Party #1") will be dismissed for failure to state a claim.

3. Harassing statements

Plaintiff asserts that Defendants Brown and Wandrych violated his rights under the Eighth and Fourteenth Amendments by making various harassing statements, including calling Plaintiff a "bitch" and telling him not to "turn a stick up into a murder." (Compl. ¶¶ 35, 41.) The use of harassing or even degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*,

357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan.21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). There are no allegations indicating that Defendants' comments were anything more than insults or idle threats.[5] Accordingly, Plaintiff fails to an Eighth Amendment claim against Defendants Brown or Wandrych arising from their conduct.

**B. Fourteenth Amendment (Due Process)**

To the extent Plaintiff asserts that Defendants Brown and Wandrych violated his right to substantive due process, Defendants' verbal harassment does not rise to the level conduct that

[5]Plaintiff's evidence tends to confirm the notion that Brown's statements were, at most, idle threats. According to a statement prepared by Plaintiff in connection with his misconduct hearing, Plaintiff interpreted Brown's statements about turning a stick-up into a murder as "[Brown's] way of being facetious." (Compl., App'x D, docket #1, Page ID#75.) In addition, Plaintiff perceived that Brown was "apologetic" about the "Rick James" comment, after Brown told Plaintiff that there had been a misunderstanding. (*Id.* at Page ID##75-76.) Apparently, it was Brown's *apology* that made Plaintiff concerned, and Plaintiff became more concerned when an inmate told him that he was "being set up" by Brown and Wandrych. (*Id.* at Page ID#76.) Notwithstanding Plaintiff's concerns, there is no indication that Defendants intended to harm Plaintiff.

"shocks the conscience," as is necessary for a substantive due process claim. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995) (citing *Rochin v. California*, 342 U.S. 165 (1952)).

Moreover, Plaintiff fails to state a procedural due process claim because he does not allege that Defendants deprived him of a protected interest. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) ("Without a protected liberty or property interest, there can be no federal procedural due process claim.") (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Plaintiff asserts that he was placed in punitive segregation on the day that he had a confrontation with Officer Brown, but he does not allege that Brown or Wandrych had any role in that placement. Accordingly, Plaintiff's due-process claim against Defendants Brown and Wandrych will be dismissed for failure to state a claim.

**C. State law**

Plaintiff contends that Defendants were negligent, breached a contract, violated Michigan's seat belt law, and/or did not comply with prison policies regarding the use of restraints when transporting prisoners. Section 1983 does not provide redress for a violations of state law and prison policies. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Consequently, claims based solely on violation of state law and/or prison policies are not cognizable under § 1983.

To the extent Plaintiff asserts claims arising solely under state law, this Court declines to exercise supplemental jurisdiction over such claims. *See* 28 U.S.C. 1367(c)(3) (allowing a district court to decline supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction). The Sixth Circuit routinely has held that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state-law claims should be dismissed without reaching their merits. *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991). Therefore, because the Court is dismissing Plaintiff's claims arising under § 1983, the Court will also dismiss Plaintiff's claims arising under state law. Finally, because the Court is dismissing the action, Plaintiff's pending motion for appointment of counsel (docket #8) will be denied as moot.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's § 1983 claims will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, his state-law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.

Dated: February 9, 2012

/s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge